ORA LANG, RESPONDENT, v. J. C. NICHOLS INVESTMENT CO., APPEL-LANT.—59 S. W. (2d) 63.

Kansas City Court of Appeals, March 6, 1933.
Certiorari denied by Supreme Court, June 10, 1933.

1124

*Sutton R. Layton* and *Madden, Freeman & Madden* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Spurgeon L. Smithson* for appellant.

TRIMBLE, J.—This is an action brought by plaintiff as the widow of Mark Lang, deceased, who, while riding in an automobile in the State of Kansas, going west on paved Highway No. 50 and crossing its intersection with Mohawk Lane, collided with the automobile of one, Hoffman, who was proceeding east on said Highway across said intersection, which collision is alleged to have been caused by the skidding of said cars on account of an unobservable, slippery and dangerous condition arising from an accumulation or stratum of mud from a recent grading of Mohawk Lane by the defendant J. C. Nichols Investment Company, owner of the Subdivision of which Mohawk Lane is a part; the negligence charged being that, in grading said Mohawk Lane to its intersection with Highway No. 50, defendant left a quantity of loose earth on said lane which was negligently allowed to wash down upon the paved slab of said Highway No. 50 by reason of the negligent failure to provide planks or guards to prevent such washing. Plaintiff's husband was almost instantly killed by said collision.

Deceased left his widow and two children, Louis Lang, a minor eighteen years of age and Doris Adair, twenty-one years old; the widow and Louis, during deceased's life, being dependent upon him, and were by his death deprived of his support, assistance, society and maintenance; and this suit was instituted in Missouri by plaintiff as his widow, for the exclusive benefit of his widow and children under the Kansas Statute giving to them a cause of action for wrongful death (Sec. No. 60-3202, Gen. Stats., *Kansas*, 1923). The section provides that "the action must be commenced within two years. The damages cannot exceed $10,000, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be dis-

tributed in the same manner as personal property of deceased." The limitation as to time is, it will be noted, a part or condition of the cause of action created.

At first, the suit was jointly against defendant and Hoffman and certain corporations other than defendant, but was later dismissed as to all except it, against which plaintiff has proceeded to judgment based on a verdict for $7500 in plaintiff's favor, from which defendant has appealed.

As hereinabove shown, the section of the Kansas Statute creating the cause of action provides in the statute that the action must be commenced within two years. Our Missouri Death Statute (Sec. 3262, Art. 1, p. 27, entitled "Damages," R. S. Mo. 1929, 5 Mo. St. Ann., p. 3353) provides a somewhat similar cause of action, but by a Statute of Limitation (Sec. 3266 of same article), it is provided that: *"Every action instituted by virtue of the preceding sections of this article* shall be commenced within *one* year after the cause of action shall accrue."* (Italics ours.)

Deceased was killed, in Kansas, on August 7, 1928; the suit was instituted on October 4, 1929, in Missouri. It will be observed that this was after the expiration of one year allowed by the aforesaid Missouri Statute, but within the two years stated in the Kansas Act.

Throughout the trial, defendant insisted, and preserved its objections in every way, that the suit was barred because of our said Statute giving only one year for bringing it; said point is now again raised on appeal, and, of course, calls for determination at the outset.

It must be borne in mind that the cause of action herein sought to be enforced has no basis or support whatever in said Missouri Death Statute, Section 3262. The cause of action is given by the Kansas Statute, Section No. 60-3203 above cited; and enforcement in Missouri, of such cause of action arising in Kansas, is authorized by our statute, Sec. 705, R. S. Mo. 1929, 2 Mo. St. Ann., page 918. Now, our statute of one-year limitation, Section 3266, aforesaid, is a part of the same Article 1 of Chapter 27 in which our Death Statute is found, and by its very terms applies only to said Death Statute and to the other causes of action "instituted by virtue of the preceding sections of this article" (Art. 1, Chapter 27). The only limitation statutes applying to actions permitted by our Section 705 is the *general* 5-year *limitation* statute (Sec. 862, R. S. Mo. 1929), which provides that length of time in which suit may be brought "for any injury to the person or rights of another, not arising on contract not herein otherwise enumerated," and Section 869, R. S. Mo. 1929, 2 Mo. St. Ann., p. 1158, which limits actions originating in another state to the term in which it is *"fully barred* by the laws of the State, territory or country in which it originated." (Which in this case is *two* years.) So that, as to the cause of action herein, under the circumstances of this case, the *governing* limitation is that of the two

years provided in the Kansas Death Statute sought to be enforced. To apply to the cause of action herein the limitation of one year in Section 3266, which, so far as this case is concerned, has reference only to the causes of action given in Sections 3262-63-64-65 would be to judicially amend Section 3266 so as to make it apply, not only to the actions "instituted by virtue of the preceding sections" but also to that given by Section 705, Article 1, Chapter 5, Revised Statutes, Missouri 1929, a thing we have no right or authority to do.

The case of Farthing v. Sans, 296 Mo. 442, is cited in support of appellant's contention that plaintiff's cause of action herein is barred by said section 3266. In that case, plaintiff, a resident of Illinois, was a minor at the date the cause of action accrued in that State, to-wit, September 20, 1899. Under the Statutes of Illinois, the action could be brought at any time within two years thereafter, but plaintiff, being a minor, another statute of Illinois gave him *two years after he became 21* (April 12, 1908), or until April 12, 1910, to bring suit. But before this time elapsed defendant removed from the State of Illinois and became a resident of Missouri in 1907, and remained so ever thereafter, and by another Illinois statute, limitation did not run while defendant was out of the State. So that by reason of plaintiff's minority and defendant's non-residency from and after 1907, plaintiff was not barred by any statute of Illinois. But plaintiff did not institute his suit *in Missouri* until more than *eight* years *after* plaintiff had become of age, which eight years were more than the five years allowed by the general limitation statute of Missouri (Sec. 862), during all of which plaintiff could have sued defendant in Missouri since the former was, during all of that time, of full age and under no disability. It was held that the Missouri statute of *general* limitation applied, and that the cause of action was barred thereby.

But the facts in the case at bar are different. Here, the general five-year Missouri Statute of Limitation cannot be invoked because, at the time this suit was brought, the five years allowed by it had not elapsed; nor was the case barred by Section 869, Revised Statutes Missouri 1929, since it was not "fully barred" by the two-year limitation in the Kansas Statute. In the case at bar both parties were and are residents of Missouri, hence the residence of the parties does not affect or complicate the question, 296 Mo. 442, l. c. 447. Hence the cited case does not control under the facts of the present case, save perhaps insofar as it impliedly *would* have given effect to the statute of the foreign state *if* the facts had been such as to allow its operation, which is precisely the situation here.

Likewise, the cited case of Tieffenbrun v. Flannery, 151 S. E. (North Carolina), 857, 861, does not fit the facts of the case now being considered. Plaintiff in that case, a resident of Missouri, and administratrix of her husband's estate under appointment by the Pro-

bate Court of Dunklin County, Missouri, sued the defendant in North Carolina for the wrongful death of her husband, killed in Florida because of defendant's negligence in driving his automobile in violation of certain statutes of Florida regulating the operation of motor vehicles. Objection was made that she could not maintain in North Carolina an action for the wrongful death of her husband, because his suit was brought more than one year after the death of said deceased, which would be in contravention of the North Carolina statute which allowed only one year in which suit could be brought. In Florida, however, its statute provided that suit could be brought at any time within two years. Plaintiff's contention was that, although it was not brought in one year, yet as Florida allowed two years, and the action was brought within that time and was transitory, i. e., followed the person, she could assert the same in any forum which had jurisdiction of the parties and of the cause of action; and that as the time limit contained in the North Carolina statute is a part of the cause of action, it cannot be considered a Statute of Limitation, and since she brought from Florida to North Carolina a valid cause of action, she is entitled to maintain the same in the North Carolina courts. The court quoted 2 Wharton on Conflict of Laws (3 Ed.), p. 1264, which says:

"While the bar of the statute by which the cause of action *is created* thus precludes the maintenance of an action thereon in another jurisdiction, the law of which allows a *longer* period, the converse is not necessarily true; though *some* of the cases hold that the statute *creating the cause* of action *governs* in this respect, when it prescribes a *longer,* as well as when it prescribes a *shorter,* period than that fixed by the law of the *forum.* This view, however, seems to rest upon a misapprehension. The reason the lapse of the time prescribed by the statute *creating the cause of action* prevents the maintenance of an action in another jurisdiction is that it *extinguishes* the cause of action, and there is thenceforth nothing to support an action in *any* jurisdiction. Assuming, however, that the time allowed by the foreign statute *creating* the cause of action *has not expired,* the plaintiff comes to the bar of the forum with a concededly existing cause of action; but it is *not apparent* why an action thereon *does not,* as in the case of an existing cause of action at common law, *fall within the operation of the general principle that the limitation of actions is governed by the law of the forum."* (Italics ours.)

(In the case at bar, the limitation of the forum has not yet run.)

The court finally held that the statute providing only one year in which the suit could be brought was "a legislative declaration of the policy of this State providing in express and mandatory *language* that no action for wrongful death shall be asserted in the courts in this State after the expiration of one year from the time of death." The trouble with the applicability of this decision to the case at bar

is that the statute relied upon by defendant to bar this case is not expressed in such language as to say that no action for wrongful death shall be asserted in the courts of this State after one year from the time of death but that, as heretofore said, it applies only to the statute, Section 3262, of that particular article, while the *general limitation* statute applies to the cause of action given by the Kansas statute and allowed to be sued on by our Section 705, and sought to be enforced herein. And since the limitation of two years in the Kansas statute is a condition of the cause of action created by it and such cause of action is the one herein sought to be enforced and is not barred by the Kansas statute, it is not barred here because the only statute *here* that could be considered as barring it has no application to such cause of action.

Likewise the cited case of Rosenweig v. Heller, 153 Atl. 346, can afford appellant no relief because its holding does not support the bar claimed, for the reason that the cause of action on which the case was based was not barred by any statute in this State, nor was it barred by the statute of Kansas which created the cause of action.

The other cases cited by appellant in support of its contention that the suit is barred, go no further than to assert the rule that ordinarily the limitation law of the forum governs, which it would in this case if the limitation statute of the forum had fully run, but it hasn't.

There is no question but that the plaintiff is the one authorized by the Kansas statute to sue. By its very terms it so provides, hence no question can arise on that account, and, indeed, no point is made on that score.

The case is not barred, and cannot be disposed of on that ground, so we must now go into its merits, which call for the facts. They are as follows:

Plaintiff instituted suit on October 4, 1929, in which she set up the facts, heretofore stated, as to the surroundings, place of the collision and its tragic result. She pleaded that the action arose under the laws of Kansas by virtue of Sections 60-3201, 60-3202 and 60-3204, Revised Statutes Kansas 1923, all of which were duly set forth; that as a part of defendant's general real-estate-land-and-development business in Johnson County, Kansas, and in Kansas City, Missouri, defendant was engaged in grading and preparing to pave a road known as Mohawk Lane at its intersection with Highway No. 50 in said Johnson County, Kansas; that Mohawk Lane sloped south toward and to Highway No. 50, and in said grading operations defendant caused a large quantity of earth and dirt to be loosened and scattered along and upon said Mohawk Lane at said point near to and north of said highway; and, prior to the collision, a rain washed a large quantity of said loose earth and dirt down said slope onto the pavement of said Highway No. 50, causing the paved surface

thereof at said intersection to be covered with slippery, slimy mud, and to become unsafe for passing vehicles, and which, at the time of said collision, caused automobiles to slip and slide about in crossing that portion of the pavement; that defendant was negligent in that it caused or permitted said dirt to be loosened, to accumulate on said Mohawk Lane and to be washed upon said Highway and create said slippery and slimy condition; that defendant knew, or in the exercise of ordinary care could have known, of the likelihood of said loose dirt washing down upon said highway and creating said slippery condition, that it knew of its presence thereon and of the danger of automobiles slipping and skidding about or coming in contact with each other, in time, before said injury, to have prevented the same by keeping the dirt from being washed upon said highway, or by cleaning said slippery or slimy mud therefrom, or by warning travelers thereon of the danger therefrom; all of which negligent acts concurrently and jointly contributed to and were the direct causes of the collision and injuries aforesaid. The defendant's answer after a general denial also set up that if there were any cause of action in plaintiff's petition, such cause accrued on the 7th of August, 1928, and as no action was commenced until the 4th day of October, 1929, and none within one year after August 7, 1928, said cause of action is fully barred because it did not accrue within one year before the commencement thereof as required by Section 3266, Revised Statutes Missouri 1929.

There was also a plea of contributory negligence based upon the charge that Lang's automobile was being driven by him at a dangerous and excessive rate of speed.

The evidence tends to show that Mohawk Lane, forty feet in width, extended from 52nd Street south to U. S. Highway 50, a distance of something over 900 feet, it being a "gradual slope" from 52nd Street down to Highway 50, said highway being fifty feet wide; that the plat of the addition in which Mohawk Lane appears was filed April 16, 1929, and that on said date Mohawk Lane and other streets in said addition owned by said defendant were dedicated forever to the public for road or street purposes. Highway 50 was built by Johnson County, Kansas, in the early summer of 1927, and when it was finally completed, a concrete curbing was made to run along the north side thereof and, in that curbing, openings were left for the entrance of Mohawk Lane and the other streets of the addition or subdivision; that the defendant commenced and continued to grade Mohawk Lane "early during the year 1928" and between the time of grading and the time of paving the roadway was left as graded for a period of several months, which grading extended from the north line of Highway 50 up to 52nd Street and when the grading was finished, a crown was left so that there would be drainage on either side.

The grading was left that way and mud caused by the rainfall was carried "clear down" to Highway 50. In shallow cuts the soil that remained on the surface was black dirt. After the grading was finished on Mohawk Lane, a barrier was erected across the crown consisting the two-by-six boards but these did not extend into the ditches, and this barrier across the crown was at the mouth of the street where it emptied into Highway No. 50 and the bottom of the ditches were only two or three inches below the pavement on the Highway.

At the time of the injury there was no pavement on Mohawk or any other of the streets running up from the Highway, and on the day of the collision dirt had been washed down upon the highway; the dirt was several inches deep in the gutter and extended out over a portion of the slab but not over the entire width of it, perhaps halfway across, and created a very slippery condition until the mud had thoroughly dried out. This "film of mud" extended "quite a distance" along the Highway and grew thinner as it got across to the south side of the slab. On the day of the accident there was no barricade there of any kind, and when a barricade was or had been put down, defendant merely put a stake in the ground at or near each end of the board and then set the board on edge against the pegs, no pegs being put on *both* sides of it. Mud had come from Mohawk Lane on three or four different occasions and busses on Highway No. 50 had skidded along there. At those previous occasions, as testified to by a lady residing on Highway 50 a short distance east of the intersection, the layer of mud was about half-an-inch thick; that at the time of the accident there was more mud and "over more than half across and quite a distance along the highway." She looked at the mouth of Mohawk Lane and there was no barrier there. Her statement that "about a week after this accident they put up a barricade" was, on objection, stricken out as immaterial and not probative of any issue in the case, and being properly stricken out, can have no effective consideration here.

There was evidence amply tending to show that the collision occurred on the highway "right at the mouth of Mohawk Lane" on the intersection; that "there was this slick mud clear across over the pavement, as far as that is concerned, clear across to the south side of the pavement;" that there was no drainage at all of the highway . . . all the mud and stuff came right off Mohawk Lane onto the highway," that the cars "skidded and went together," both cars being on the pavement and the road on the pavement was "awfully slick and lots of mud on the pavement;" furthermore the evidence tended to show that the collision occurred by reason of skidding of the cars toward and against each other by reason of the slippery condition created by the mud coming from off Mohawk Lane onto the

intersection; that the mud came thus from Mohawk Lane several times before the occasion which caused the accident but not very much mud thereafter "because they put up barricades after the accident." (No objection here.) One witness, when asked "whether there was any barricade put up there before this accident?" replied, "None that I know of, none that I ever seen. I know I got terribly mad myself because there was so much mud on the pavement there. It was all right if you knew it, about the mud, but people came around the curve and there I came very nearly being wrecked several times, not me hitting some one else but somebody else hitting me." That Highway No. 50 was a "prettly heavily traveled highway" between 200 and 300 vehicles passing there in an hour and that no dirt or mud on this highway was seen before Mohawk Lane was graded.

A Mr. Lightfoot, road patrolman, reached the scene of the collision about 8:30 A. M. Plaintiff's husband, Mr. Lang, was sitting in the car dead. In the stress of business, witness was "riding the road all the time." He said that there were "two roads coming down to the highway that had been freshly graded and every rain that we had washed mud across the highway and made it very slippery and in a dangerous condition." He did not remember exactly how long that condition had existed but thought "a couple of months or maybe more" that the mud had been washed down there. "These fresh mud streets naturally the water rushing down would wash the dirt. There was more or less loose dirt on there. It was freshly graded. It would wash across the brick highway . . . naturally a freshly graded street with water running over it will wash down where there is nothing to stop it." It was not paved or curbed at that time. The mud went clear across the brick highway in two different places, that is, where both of these graded streets, Mohawk and Neosho Lanes, were. "I hit that road myself and that was the kind of mud that was over there and you could hardly stay on the highway and you would run on it before you would think about it." He testified that he did not believe there were any barricades on Mohawk Lane to stop this dirt. "I do not believe there were. I never seen any there before the accident, but it seems after the accident—;" here witness was stopped by an objection. The highway was in good condition outside of those times when the rains would wash the dirt down placing a thin scum of mud there which made it "so slick you could hardly stand on it yourself." Witness did not remember of any mud draining down on that highway before the grading of Mohawk Lane was done nor was there any dirt on the highway except where these streets were graded. Witness Lightfoot further said "there was quite a bit of mud there that morning. There had been a rain that night and there was quite a bit of mud came down on the highway off the new graded road they had in there.

. . . It came off that street. The rest of it (the adjacent land) was grass. That is about the only place it could come from was off that street." . . . "It was very slick stuff that came down there. It was loose dirt that came on the slab and it made it very slick."

A nephew of the deceased who was riding with him at the time of the collision says that "when we drove into the mud we got over onto our side of the road and saw another car coming and when I recognized it, it began skidding and we were skidding too and we just got over there and the cars hit. I do not remember anything else after they hit." They were going about seven to ten miles per hour, the car they collided with was going from twelve to fifteen miles per hour; the other car was about seventy-five feet away when he saw that car skidding. He became unconscious and did not recover consciousness until in the afternoon sometime. The mud came down Mohawk Lane. His uncle (deceased) was trying to keep out on the right side of the road and stop skidding. The driver of the other car was working too, trying to stop.

It is urged that at the time of the collision there had been a common law dedication of Mohawk Lane to the public, and therefore defendant owed no duty to keep mud from washing from it upon said Highway. We do not think that non-liability necessarily follows as a result of a common law dedication, even if such had been shown, which was not. In the first place, the opening of Mohawk Lane was effected and completed by a statutory dedication in the filing of the plat of April 16, 1929, after the injury had occurred. Between the time of *grading* Mohawk Lane and the statutory dedication by plat there is no evidence of anything done other than a *continued* preparation of the Lane for the statutory dedication which completed the opening of the same to the public. But even if there could, by any process of reasoning, be said to be a common law dedication between these dates, that would make up no difference. Here, the grading of the road and leaving the loose earth without guards or barrier was an *affirmative* negligent act for which the defendant would be liable; but the road authorities, if a cause of action were given by statute, would be liable for allowing the slick mud to remain; even so, the fact that the authorities allowed that would have no effect to excuse the one who *actively* caused the trouble. They wuold both be liable. [43 C. J. 1101, sec. 1101.] He who *creates* a hazard upon a public highway is liable for injuries caused thereby. [Cedarland v. Thompson, 209 S. W. 554, 556.]

It is said no reliance can be put on this, because there is no pleading of a *nuisance* appearing in the petition. But it matters little what a defect or hazard in the roadway is *called*. The facts stated in the petition showed what the trouble was and the stated facts are what governs and not the *name* given to the hazard or dangerous situation which caused the injury.

Not only was there no common law dedication in the case, but, if there had been, it could have acted as a defense only by way of estoppel; but, in order for it to do so, it must have been pleaded, which wasn't done. [Kinloch Telephone Co. v. City of St. Louis, 268 Mo. 485.] The facts relied upon to constitute a common law dedication must also be alleged else the mere assertion that a common law dedication exists, or was made, is a mere legal conclusion, 18 C. J. 133. And, of course, the burden of proof as to such common law dedication is upon the one asserting and relying upon it. [Johnson v. Ferguson, 44 S. W. (2d) 650, 654.] However, there is no need to pursue this subject further, since there is no implied or common law dedication in this case and, if it were, it is a novel use of that doctrine for the owner of land to attempt to use it as a defense to an active wrongful act of his. [Mulik v. Jorganian, 37 S. W. (2d) 963, 964; Borchers v. Brewer, 271 Mo. 137.] The preparation of Mohawk Lane for use as a road until the owner apparently deems it finally ready for such use and files a plat dedicating it thereto, would seem to be a declaration of said owner that it was not *theretofore* dedicated in any way. Even the filing of a defective plat, so defective that it cannot operate as a dedication cannot be regarded as, or tortured into, a common law dedication. [Hayes v. Kansas City, 294 Mo. 655.] Consequently the leaving of an opening in the curb of Highway No. 50 for an intersecting road *whenever* it should be dedicated, can have no effect by way of acceptance on the part of the public, to change the mere preparation of a strip of ground for use as a road, into any dedication other than the one the owner afterward did actually make, namely the statutory dedication in the plat filed.

We hold that there is no evidence to justify the submission of such an issue as the above to the jury. [Drimmel v. Kansas City, 180 Mo. App. 339, 349.] Hence Instruction No. 1 for plaintiff was not erroneous in that it failed to require the jury to find that Mohawk Lane was at common law dedicated as a road or even was merely a private road; nor was it error to refuse defendant's Instructions J and K which sought to inject such issues into the case. Said two instructions were also properly refused because each of them ended with a peremptory instruction to find for defendant.

The right of defendant, as an abutting property owner, to ingress and egress by a private road to and from Highway No. 50, has nothing whatever to do with the case. It was not in the exercising or attempted exercise of such right that caused the injury, and the erroneously cited case of Downing v. Lee, 98 Mo. App. 604, has no application, but from the cited page of 614 given with it, we infer that the case of Dries v. City of St. Joseph, 98 Mo. App. 611, 614, was the one intended to be cited. However, that case is not in point.

That was a case wherein the city wrongfully obstructed the end of a street or alley by an embankment so that property was not only rendered inaccessible but was otherwise damaged. The same is true of the cited case of Beck v. Ferd Heim Brewing Co., 167 Mo. 195. In the case at bar the defendant *actively changed the situation and conditions* and by its act left these so as to create a hazardous and dangerous place on the Highway. But in the Beck case, the court say: "For aught that appears in the petition, this street, sidewalk and the embankment on the defendant's premises *are in the same condition* in which they were left by the municipal authorities."

We are unable to agree with the defendant's claim that "there was no competent evidence that the defendant could, by the exercise of ordinary care, have erected barriers which would have prevented the dirt from washing down upon Highway 50." There was ample evidence to support the charge that it could have been, and in fact that was done after the injury occurred. Indeed the claim that the dirt could not have been kept off the highway rendered admissible the evidence that the barriers were afterward put up.

Neither was it error to permit a man, experienced in grading and working on roads, to testify that he had done so and that this road could have been furnished with guards to hold the dirt and prevent it from washing down on to the Highway. The claim that there was no competent evidence to "support the hypothesis" that there was "loose dirt" left on Mohawk Lane prior to the rain in question is wholly without merit. It was not an "hypothesis" that the loose dirt was left there in grading; it was testified to repeatedly as a fact.

From the facts hereinbefore stated as having had evidence to support them, it is apparent that the trial court did not commit error in overruling defendant's demurrer to the evidence. There was evidence to support the jury's finding of actionable negligence and that defendant could by the exercise of reasonable care have prevented the dangerous hazard on the highway, but negligently failed to do so, and that such negligence proximately caused the death of plaintiff's husband. So that the petition and the evidence established, in view of the jury's verdict, a valid cause of action coupled with actionable negligence on the part of defendant rendering it liable for the damages sustained. [Tockstein v. Bimmerly, 150 Mo. App. 491, l. c. 495; Strider v. City of St. Joseph, 185 S. W. 1196; Hilliard v. Noe, 198 S. W. 435, l. c. 436.]

It seems that Virgil Lang, deceased's nephew, in company with said nephew's father, Alfred Lang, was riding in deceased's car at the time of the collision, and that Virgil Lang was slightly injured. As he was a minor, suit was brought by Virgil Lang, through his father as next friend, against Hoffman for damages and judgment for $500 was recovered against him, which was paid. The defendant

offered in evidence the petition and the judgment in that case, but they were excluded and this is complained of as constituting reversible error. In the brief before us now, it is urged that the evidence was competent as impeaching the evidence of Virgil Lang, the boy, and Alfred Lang, his father, to the effect that the defendant's negligence, and not Hoffman's, caused the injury. But the record discloses no such ground of admissibility was urged at the time the evidence was offered. But that the evidence was offered "as respects the competency and interest of the witness and for that specific purpose, interest of this witness and the witness Virgil Lang his son." At another place in the record when the introduction of the excluded evidence was being opposed and contended, defendant's counsel was asked what was the purpose of the offer, and he replied enigmatically: "We offer it as competent evidence." And when the court suggested that instead of showing the witness's interest it would show that he was "disinterested. He is through. He has no further interest," defendant's counsel, offering the evidence, replied: "I offer it as competent evidence for whatever it is competent for." So that nothing was said at the trial about it being offered for "impeachment purposes." Again, as the boy Virgil was a minor and knew nothing about the suit when it was brought, as it was instituted by "next friend," it is not seen how it could impeach his testimony; as to the father, the boy's "next friend," the record does not disclose or set forth the petition, so that neither it nor the judgment can be examined to see wherein their testimony could be impeached by the excluded evidence. The asserted negligence of Hoffman would not necessarily contradict the charge of negligence against defendant. Besides, Hoffman was at that time a defendant in the case but later it was dismissed as to him. And the objection to the evidence offered was not made by plaintiff but by counsel for Hoffman. Moreover, both Virgil and his father were cross-examined by counsel for defendant, and the exclusion of the evidence was, if anything, merely a limitation on the cross-examination, which was within the sound discretion of the court, and which will not be reviewed unless palpably abused. [Wendling v. Bowden, 252 Mo. 647, l. c. 695; Bertke v. Hoffman, 50 S. W. (2d) 107; Dietz v. Southern Pac. Ry. Co., 28 S. W. (2d) 395.] Especially would this be the case where the proffered evidence would not appear to impeach the witness but would inevitably lead the jury to think that Hoffman had already been judiciously convicted of blame for the injury, and at that time Hoffman was still a defendant in the case. The point here discussed is without merit and clearly furnishes no element of reversible error.

The complaint that counsel for plaintiff committed reversible error in his closing argument is likewise without merit. In the first place, it originated as an answer to an argument of dubious propriety on

1136

opposing counsel's part, and was finally objected to as "an appeal to sympathy." The court, in effect, sustained the objection, at the same time mildly rebuking the argument by saying, "Confine yourself to the evidence." No request for further relief, or more severe reprimand, was asked. Under such circumstances, the court cannot be convicted of reversible error. [Cullen v. Johnson, 325 Mo. 253, l. c. 276; Shields v. American Car Co., 293 S. W. 77.]

Having gone through the case carefully and examining every point made without finding reversible error, nothing remains to be done but to affirm the judgment. It is accordingly so ordered. All concur.