553 P.2d 1288

**FIRST NATIONAL BANK IN ALBUQUERQUE, Ancillary Executor and Personal Representative of the Estate of Walter F. Murphy and Margaret M. Murphy, Deceased, Plaintiff-Appellee,**

v.

**Olive Gruen BENSON, Executrix of the Estate of William R. Benson, Deceased, Defendant-Appellant.**

No. 2189.

Court of Appeals of New Mexico.

July 27, 1976.

Rehearing Denied Aug. 10, 1976.

Certiorari Denied Sept. 16, 1976.

Kenneth R. Brandt, Bruce D. Hall, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellant.

Joseph M. Fine, Albuquerque, for plaintiff-appellee.

OPINION

SUTIN, Judge.

This is a wrongful death action governed by § 22–20–3, N.M.S.A. 1953 (Vol. 5). By interlocutory appeal, defendant claims the trial court erred in denying him summary judgment because all of plaintiff's and defendant's decedents were residents of Missouri, having died in an airplane crash in New Mexico; that the State of Missouri alone had jurisdiction over the parties and the subject matter under the "significant contacts choice of laws" rule; that the Wrongful Death Act of Missouri controlled this claim for relief; that New Mexico should adopt this rule and abandon the "lex loci delicti commissi" rule. We affirm.

In 1961, the Supreme Court adopted the lex loci delicti rule. *Zamora v. Smalley*, 68 N.M. 45, 358 P.2d 362 (1961). The Court said:

> This accident occurred in the state of Colorado and is to be governed by the substantive law of that state. Restatement, Conflict of Laws § 378 (1934); 9 Blashfield Encyclopedia [sic] of Automobile Law § 5791. [68 N.M. at 47, 358 P.2d at 363].

The 1934 version of § 378 of the Restatement, supra, says:

> The law of the place of wrong determines whether a person has sustained a legal injury.

Blashfield, supra, § 5791, 1964 Supplement, notes *Zamora v. Smalley* for the rule that:

> The rights and liabilities of parties in automobile accidents, as a general rule, are determined by the laws of the state where the accident occurred.

We have no authority to change this rule. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). This matter rests in the Supreme Court.

In passing, we note that Missouri adopted the lex loci delicti rule. *Hall Motor Freight v. Montgomery*, 357 Mo. 1188, 212 S.W.2d 748 (1948); 16 Am.Jur.2d, Conflict of Laws § 71 (1964). This action was originally filed in Missouri. It was dismissed after the complaint was filed in New Mexico. Plaintiffs would have been entitled to trial in Missouri, governed by the Wrongful Death Act of New Mexico. By dismissal of their Missouri complaint and the filing of their complaint in New Mexico, plaintiffs, under Missouri law, lost their right to a claim for relief in Missouri. See Judge Hernandez' disssenting opinion.

The dissenting opinion strongly urges the adoption of the "significant contacts choice of laws" rule. This rule is in a state of uncertainty and we question the advisability of adopting this rule, presently.

Since *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), a revolution has occurred in multi-state conflict of laws cases. Prior thereto, the doctrine of lex loci delicti commissi controlled the issue of liability, and not the lex fori (the law of the forum, where suit is brought or a remedy is sought).

Lex loci delicti commissi was a doctrine of certainty. Without exception, the law of the State of injury applied regardless of where the action was commenced. *Babcock* rejected the mechanical place of injury rule, sacrificed the certainty provided by the old rule for a new one, that which was considered to be a just, fair and practical result. This new rule was called "center of gravity" or "grouping of contacts" doctrine. This doctrine was based upon the following philosophical concept:

> *Justice, fairness and "the best practical result"* . . . *may best be achieved by giving controlling effect to the law of the jurisdiction which,* because of its relationship or contact with the occurrence or the parties, *has the greatest concern with the specific issue raised in the litigation.* [Emphasis added] [191 N.E.2d at 283].

On *Babcock,* Professor Reese, in "Chief Judge Fuld and Choice of Law", 71 Colum.L.Rev. 548 at 552 (1971) said:

> It marks a new beginning and where it will lead is as yet uncertain. Perhaps it will lead to the abandonment of all choice-of-law rules in favor of an approach by which cases are decided essentially on an ad hoc basis after consideration of certain factors. Perhaps, on the other hand, it will lead to the development of choice-of-law rules which will handle satisfactorily the myriad of complicated situations that can be expected to arise. Come what may, the case has brought us to a great divide.

In New York, for ten years, this doctrine began with dissent and ended with dissent. *Dym v. Gordon*, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965); *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). The Court did agree in *Long v. Pan American World Airways, Inc.*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965). Confusion over the application of the new rule has become confounded. "Center of gravity", "grouping of contacts", "interests", "concerns" have become catchwords and so interpreted as to reflect the innate beliefs of each member of the Court. These decisions lack a precise consistency. The results depend on what the court believes the public policy of a State should be. It depends upon what we believe "[j]ustice, fairness and 'the best practical result'" would be in each case. Although each member of a Court has definite beliefs that the law of the jurisdiction which has the greatest interests in the litigation should control, a review of the cases discloses that speculation plays an important role.

One of the areas of speculation is consideration of a factor that " . . . parties may have acted in reliance upon their assumption that courts would apply a certain rule of decision, and application of a different rule to their detriment would then be unjust. . . . '[I]t is jurisprudentially significant that parties' rights be determined by the law or system of rules which they most probably believed would control their relationship." *Miller*, supra [290 N.Y.S.2d at 747, 237 N.E.2d at 886]. What the parties believed the law to be prior to the tragedy is pure speculation.

A review of the cases will show that the result depends upon whether the court desires to protect the plaintiff or defendant. "The problem has been exacerbated, of course, by the scholar's, and sometimes the Judge's understandable penchant to discover a single embracive principle to cover all cases." *Tooker*, supra (Breitel, J., dissenting). [301 N.Y.S.2d at 542, 249 N.E.2d at 411].

Justice Breitel, concurring in *Neumeier*, supra, summed up in two sentences the status of the lex loci delicti rule in New York. He said:

> What the *Babcock* case . . . taught and what modern day commentators largely agree is that *lex loci delictus* is unsoundly applied if it is done indiscriminately and without exception. It is still true, however, that *lex loci delictus* is the normal rule, as indeed Chief Judge Fuld noted in the *Tooker* case, . . . to be rejected only when it is evident that the situs of the accident is the least of the several factors or influences to which the accident may be attributed . . . . [Emphasis by Court] [335 N.Y.S.2d at 72, 286 N.E.2d at 459].

For a review of those states which follow the lex loci delicti rule and the "significant contacts choice of laws" rule, together with extensive law review articles on this subject, see, *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973). The scholars, like the New York Court of Appeals, agree that a modification of the lex loci delicti rule is necessary, but there is a wide divergence of views on how to accomplish a just result.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

The facts of this case, in my opinion, point out most effectively the illogicalities of the *lex loci delicti* rule. New Mexico's sole connection with this matter and the parties involved therein is the entirely fortuitous circumstance that the accident occurred here. Therefore, a recital of the pertinent facts is made necessary.

On October 30, 1971, two couples, Mr. and Mrs. Walter F. Murphy and Mr. and Mrs. William R. Benson, all domiciliaries of Missouri, were returning to that state after attending a business convention in Las Vegas, Nevada. They flew a private plane rented in Missouri from a Missouri corporation of which Mr. Murphy and Mr. Benson were two of the three officers and stockholders. The plane crashed near Ramah, New Mexico. The two couples were apparently killed instantly. The identity of the person piloting the plane at the time of the crash is not known with certainty; both Mr. Murphy and Mr. Benson were licensed pilots. The estates of all four of the deceased are being probated in Missouri.

The plaintiff, ancillary executor of the estate of Mr. and Mrs. Murphy, filed this suit on October 29, 1974, alleging, *inter alia*, the negligence of William R. Benson as a proximate cause of the wrongful deaths of the Murphys. Previous to the filing of this suit, however, the executor of the Murphy estate filed suit in St. Louis County, Missouri, in June, 1972, pursuant to the Missouri Wrongful Death Act, against the estate of William Benson and the corporation that owned the plane.

This suit was voluntarily dismissed by the executor in April of 1975.

The Missouri Wrongful Death Act has a two-year statute of limitations and a limit of $50,000 on damages. This act, Missouri Revised Statutes, § 537.100 (1969), also contains a section which provides in part as follows:

". . . that if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, . . . such plaintiff may commence a new action from time to time within one year after such nonsuit . . . ."

Defendant stated her motion for summary judgment should be granted because "plaintiff's action is barred by the Missouri Statute of Limitations, which provides that every action for wrongful death shall be commenced within two years after the accrual of the cause of action." The trial court in its order denying defendant's motion stated, "New Mexico law will be applied to the resolution of each and every legal issue." The trial court certified its order for interlocutory appeal, because it involved "controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The trial court then listed the controlling questions of law involved as it saw them, to-wit:

"(a) Whether New Mexico, under the circumstances of this tort action, should apply the choice of laws principle referred to as *lex loci delicti* or the modern 'significant contacts' theory;

(b) If New Mexico courts should apply the significant contacts choice of laws rule under the circumstances of this wrongful death action, should the New Mexico Wrongful Death Act statute of limitations or that of Missouri apply;

(c) If the Missouri statute of limitations is applicable under the facts of this case, does it bar the instant suit as untimely;

(d) If the significant ·contacts rule should be applied by New Mexico courts, is the Missouri limitation on damages in wrongful death actions applicable to this suit;

(e) If the significant contacts rule should be applied by New Mexico courts under the circumstances of this wrongful death action, is the New Mexico Aircraft Guest Act applicable to this suit;

(f) If the significant contacts rule should be applied by New Mexico courts under the circumstances of this wrongful death action, is the New Mexico rule of *res ipsa loquitur* as to aircraft crashes applicable or is the *res ipsa loquitur* rule of Missouri law concerning aircraft crashes applicable."

Our Wrongful Death Statute, §§ 22–20–1 through 22–20–4, N.M.S.A.1953 (Supp. 1975), has a three-year Statute of Limitations and places no limitation on the amount of damages which are recoverable except when death has been caused by some public conveyance.

The specific questions of whether to adopt the "significant relationship" doctrine in cases sounding in tort embodied in the Restatement (Second) of Conflict of Laws, §§ 6, 145 (1971), in place of the traditional rule of *lex loci delicti*, to my knowledge, has not been answered by our Supreme Court.

I do not agree with the majority that a choice of law rule in tort was propounded in New Mexico. *Zamora v. Smalley*, 68 N. M. 45, 358 P.2d 362 (1961) is not precedent for the case at bar. Since New Mexico and Colorado law was substantially the same, the conflicts issue presented in *Zamora* was a "false conflict." See Traynor, "Is This Conflict Really Necessary?," 37 Tex.L.Rev. (1959). While there is language in *Zamora* indicating that New Mexico would, in a proper case, follow the First Restatement or *lex loci delicti* rule, this language is dictum and, accordingly, not determinative of the choice of law issue in this case.

I am aware of the rulings in *Cain v. Bowlby*, 114 F.2d 519 (10th Cir. 1940) and *Pound v. Insurance Company of North America*, 439 F.2d 1059 (10th Cir. 1971), but this court is not controlled by them.

Section 6 of Restatement (Second) of Conflict of Laws (1971) reads:

*"Choice-of-Law Principles*

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Section 145 reads:

*"The General Principle*

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

The reasoning which underlies the "significant relationship" doctrine is that the most just and practical result can be reached by giving primary consideration to the laws of the state which, by reason of its relationship with the incident or the parties, has the greatest interest in the resolution of the issues raised by the litigation. The chance occurrence of a tort in a given state does not necessarily give that state any concern or interest in the resolution of the resulting legal questions. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y. S.2d 743, 191 N.E.2d 279 (Ct.App.1963); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973); Leflar, "Choice-Influencing Considerations in Conflicts Law," 41 N.Y.U. L.Rev. 267 (1966); *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968).

The most compelling argument in favor of the rule of *lex loci delicti* is predictability of result. This argument loses much of its persuasiveness in tort cases which usually arise out of wholly chance circumstances. I am persuaded, however, that the "significant relationship" doctrine provides the most practical and just approach for reconciling the competing interests of the various states in tort cases with bilateral or multi-state relationships. I would therefore adopt Restatement (Second) of Conflict of Laws, §§ 6 and 145 (1971).

It is readily apparent that in this situation Missouri has all of the significant relationships with the sole exception that the accident happened in New Mexico. However, as former Justice Leflar informs us, this is not merely a process of enumerating the relationships of each state and selecting the state having the largest number of contacts. One such relationship may well outweigh all of the others. The process is a balancing one. The method: "A govern-

mental interest in a choice-of-law case, in its simplest sense, is discoverable by putting together (a) the reasons supporting the rule of law in question (F's or X's law) and (b) the state's (F's or X's) factual contacts with a case, or the issue in a case, to see if they match." Leflar, "Choice—Influencing Considerations in Conflicts Laws," supra at 291.

The most important issue in this case is which wrongful death statute shall we apply, that of New Mexico or that of Missouri? The purpose of wrongful death statutes is generally twofold: (1) to compensate the family or relatives of the deceased for their pecuniary loss caused by the death, and (2) to promote public safety by making negligence that causes death costly to the tort-feasor. *Stang v. Hertz Corporation*, 81 N.M. 348, 467 P.2d 14 (1970). New Mexico has a definite interest in promoting public safety within its borders, but it has no interest in seeing that the family or relatives of a Missouri resident are compensated for their pecuniary loss. Missouri, on the other hand, has a definite interest in such persons being compensated and, since the damages, if any, in this instance would be meted out against estates located in Missouri, the salutory effect of such a punishment would occur in that state. Of the two purposes to be served by such a statute certainly the most important is that of compensating the family or relatives for their pecuniary loss. I would hold, therefore, that the Missouri Wrongful Death Statute should apply.

The courts of Missouri have viewed the time bar provisions of their wrongful death statute as an integral part of the cause of action created by that statute so that expiration of the prescribed period not only extinguishes the remedy but the right. *Lane v. J. C. Nichols Inv. Co.*, 227 Mo. App. 1123, 59 S.W.2d 63 (1933); *State ex rel. Kan. City Stock Yards v. Clark*, Mo., 536 S.W.2d 142 (1976). Our Supreme Court has interpreted our wrongful death statute in the same way. *Natseway v. Jojola*, 56 N.M. 793, 251 P.2d 274 (1952).

Therefore, the Missouri Statute of Limitations should apply.

As to whether the Missouri Wrongful Death Statute was tolled by the voluntary non-suit taken by the plaintiff in its action in Missouri, I would hold it was not tolled. The statute provides that "plaintiff may commence a new action from time to time within one year *after* such non-suit." [Emphasis mine.] This cause was filed before the non-suit was taken in Missouri. The Missouri Court of Appeals in *Patton v. Wabash Ry. Co.*, 221 Mo.App. 609, 283 S. W. 723 (1926) held that the one year non-suit provision did not apply when the second suit was filed before dismissal of the first suit.

Deciding as I would the foregoing, it is unnecessary to decide whether the New Mexico Aircraft Guest Statute is applicable, or whether the New Mexico or Missouri doctrine of *res ipsa loquitur* should apply.

For the reasons stated above, I would reverse this case and remand with instructions to enter summary judgment in favor of defendant.