280 P.2d 1045

J. D. MERRIMAN, Jr., d/b/a Credit Bureau of Silver City, Plaintiff-Appellee,

v.

Jerry M. HARTER, Defendant-Appellant.

No. 5862.

Supreme Court of New Mexico.

March 1, 1955.

Carl P. Dunifon, Silver City, for appellant.

J. R. Wrinkle, Silver City, for appellee.

LUJAN, Justice.

The plaintiff's assignor, a foreign company, has its principal place of business in Portland, Oregon. From there it gives instructions by correspondence. It has an agent in New Mexico whose duty is to solicit (canvass) pupils, whose applications for membership must be sent to the home office at Portland, Oregon, for acceptance. No contracts are closed here. No instruction is given here. No lessons or training material are sold here. The applicants receive their instructions through certain written lessons and training material mailed from Portland, Oregon. They send their reports for examination or correction to Portland, Oregon. The school is kept alive by lessons and training material on the one side and reports on the other, transmitted through the United States mails.

In this correspondence school the defendant became a pupil under a written contract. He signed in New Mexico his application for membership, and the plaintiff's assignor accepted it in Portland, Oregon. He promised monthly payments, which he failed to make, with the exception of four. His defense is that plaintiff's assignor has not complied with § 73–14–3 of 1953 Compilation and that plaintiff is therefore unable to maintain this action. The above section prohibits the canvassing and sale of scholarships by correspondence schools, business colleges or commercial departments of any other school, or by its agents, unless before the canvassing and selling of scholarships it has procured from the state board of education the permit prescribed by the statute.

The trial judge overruled the defense, and entered judgment in favor of plaintiff and defendant appeals.

The trial court found that the application of the defendant was accepted by plaintiff's assignor in the State of Oregon and that the contract forming the basis of plaintiff's action was consummated in the State of Oregon and was a valid contract under the laws of the State of Oregon; that said contract or any of its terms and conditions does not contravene any law in the State of New Mexico, and that none of the terms or conditions of said contract require the performance of any illegal act in the State of New Mexico, and that said contract is a valid contract in New Mexico; that under the terms of said contract the defendant owes to plaintiff the sum of $285.

There are three principal questions presented in this case. First, whether the plaintiff's assignor was engaged in interstate commerce; second, was the contract made and consummated in the state of Oregon; and third, is the act in question applicable to plaintiff's assignor.

The principles which control the decision in the first question are set out in a well reasoned opinion by Mr. Justice Harlan in the case of International Text-Book Company v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 484, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann.Cas 1103, reversing 76 Kan. 328, 91 P. 74.

The facts in that case were these: The text-book company was a Pennsylvania corporation, carrying on what is known as a "correspondence school." In the conduct of its business, it prepared and published instruction papers, text-books, and illustrative apparatus for courses of study to be pursued by means of correspondence, and the forwarding from time to time of such publications and apparatus to students. The company employs local or traveling agents, called "solicitors", "collectors", whose duties are to procure and forward to the company at Scranton, from persons in a specified territory, on blanks furnished

by it, applications for scholarships in its correspondence schools. In conformity with the contract between the company and its scholars, the scholarship and instruction papers, text-books, and illustrative apparatus called for under each accepted application are sent by the company from Scranton directly to the applicant, and instruction is imparted by means of correspondence through the mails between the company at its office in that city and the applicant at his residence in another state. The company had a solicitor in Kansas, who had procured a number of students to take correspondence courses in the schools of the text-book company. The question was whether or not the business in which the company was engaged was interstate commerce. In holding that it was, the court, among other things, said:

"It involved, as already suggested, regular and practically continuous intercourse between the Text-book Company located in Pennsylvania and its scholars and agents in Kansas and other states. That intercourse was conducted by means of correspondence through the mails with such agents and scholars. * * * More than that; this mode—looking at the contract between the Text-book Company and its scholars—involved the transportation from the state where the school was located, to the state in which the scholar resides, of books, apparatus, and papers, useful or necessary in the particular course of study the scholar is pursuing, and in respect of which he is entitled, from time to time, by virtue of his contract, to information and direction. Intercourse of that kind, between parties in different states,— particlarly when it is in execution of a valid contract between them—is as much intercourse in the constitutional sense, as intercourse by means of the telegraph * * *. If intercourse between persons in different states by means of telegraphic messages conveying intelligence or information is commerce among the states, which no state may directly burden or unnecessarily encumber, we cannot doubt that intercourse or communication between persons in different states, by means of correspondence through the mails, is commerce among the states within the meaning of the Constitution, especially where, as here, such intercourse and communication really relate to matters of regular, continuous business, and to to the making of contracts and the transportation of books, papers, etc., appertaining to such business."

The plaintiff's assignor was, without a doubt, engaged in interstate commerce. International Text-Book Company v. Pigg, supra; International Text-Book Company v. Lynch, 218 U.S. 664, 31 S.Ct. 225, 54

L.Ed. 1201, reversing 81 Vt. 101, 69 A. 541. It did nothing in New Mexico except in furtherance of that commerce. It solicited (canvassed) an application from the defendant which did not ripen into a contract until it was accepted in Oregon. It fulfilled its contract by the transmission of information through the medium of the mails.

Consequently, what was said in International Text-Book Company v. Pigg, supra, regarding interstate commerce, is applicable to the facts of this case and is binding upon this court in the case at bar.

■ The principles which control the decision of the second question, with the authorities, were set out in a very clear and well-considered opinion by Mr. Justice Bickley in the case of Alexander Film Company v. Pierce, 46 N.M. 110, 121 P.2d 940, wherein it was held that a contract is made at the time when the last act necessary for its formation is done, and at the place where the final act is done. We do not deem it necessary to rehearse the reasoning of the court in that case. But since that decision was rendered this court has again passed upon the question in a case where the facts were almost identical with those in the one before us. Trans-Radio Press Service v. Whitmore, 47 N.M. 95, 137 P.2d 309. And, we reaffirm those holdings.

■ From the record in this case, it appears that on April 1, 1952, at Hurley, Grant County, New Mexico, one E. M. Allred, a representative of the Tractor Training Service of Portland, Oregon, a correspondence school, solicited and procured from the defendant an application for a complete tractor training equipment course which he forwarded to the correspondence school at Portland, Oregon, for either its acceptance or rejection of the same. At this time defendant's check in the sum of $25 was attached to the application to apply on the full cost of registration and tuition and the balance to be paid as set forth in the contract in the event his application was accepted. On April 4, 1952, at Portland, Oregon, the Tractor Training Service accepted defendant's application. Thereafter, the correspondence school sent lessons and training material through the United States mail to the defendant and performed each and every act and obligation required of it under the terms of the contract.

■ As to the third question we are of opinion that § 73–14–3 supra, has no application to a case where a foreign correspondence school, through its agent or agents, solicits (canvasses) applications or contracts from prospective students for scholarships in said institution, and which applications or contracts are forwarded to the correspondence school, out of state, for either its acceptance or rejection, and if accepted, lessons, training material, reports, etc., are transmitted by mail.

To apply the statute of this state to the transaction disclosed by the record would have the effect of imposing a restraint upon commerce between the states, which is inhibited by the federal Constitution.

It follows from what has been said that the judgment should be affirmed with costs and the cause remanded to the District Court with instructions that it render judgment against the appellant and the sureties on the supersedeas bond.

It is so ordered.

COMPTON, C. J., and SADLER, McGHEE and KIKER, JJ., concur.