**Louise C. POUND, Plaintiff, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, a corporation, Defendant, Appellee.**

**No. 131–70.**

United States Court of Appeals, Tenth Circuit.

March 19, 1971.

Rehearing Denied May 4, 1971.

Thomas F. McKenna, Albuquerque, N. M., (Arthur H. Coleman, Santa Fe, N. M., on the brief) for plaintiff-appellant.

Thomas B. Catron, III, Santa Fe, N. M., for defendant-appellee.

Before HILL and HOLLOWAY, Circuit Judges, and DOYLE, District Judge.

HILL, Circuit Judge.

Appellant brought this diversity suit in the District Court of New Mexico seeking to recover from appellee the proceeds of an accident insurance policy. The policy was a group policy issued by appellee to International Business Machines Corporation, with the employees of the latter corporation constituting the named insureds. Appellant's deceased husband was an employee of I.B.M. covered by the accident policy, and she is the named beneficiary on the policy.

The trial court directed a verdict for appellee insurance company at the close of all evidence, and appellant takes this appeal contending generally that the trial court erred in applying New York law to find that the cause of decedent's death was not within the scope and coverage of the group accident policy.

The uncontested parts of appellant's complaint as synthesized in the pre-trial order set out the underlying facts which are not in dispute. Decedent was an employee of I.B.M. and thereby was an insured under the group policy. Decedent, with his wife the appellant, lived and worked in New Mexico. On July 13, 1967, decedent died of a heart attack while changing a flat tire on his automobile. The flat tire occurred while decedent was traveling in New Mexico in connection with the authorized business pursuits of his employer.

By its terms, the accident policy was in force when the insured was traveling on authorized business pursuits, and the insurance was against "loss resulting directly and independently of all other causes from accidental bodily injury." Under the section containing the exclusions, the policy stated, "This policy shall not apply to loss resulting directly or indirectly, wholly or partly, from (a) Sickness, disease or bacterial infection other than pyogenic infections which shall occur with and through an accidental cut or wound * * *." The master policy containing these provisions was signed and issued to I.B.M. in New York. A certificate of the policy was delivered to decedent in New Mexico.

The issue in the trial court, of course, was whether decedent's death resulted from accidental bodily injuries within the meaning of the coverage provision of the policy, or whether the death resulted from sickness or disease within the meaning of the policy's exclusion. Antecedent to determining this question, there was the additional question whether the substantive law of New Mexico or New York should be employed to construe the meaning of the terms used in the policy. It was upon these issues that the trial judge directed a verdict for appellee at the close of all evidence; and now on this appeal, the question is whether the trial court was correct in determining as a matter of law that decedent's death was not caused by accidental bodily injury, as that phrase should be construed under applicable law.

■ Upon considering this appeal, we are initially confronted with appellee's contention that the record on appeal is inadequate to support a proper consideration of the issues posed by appellant. Appellee mainly objects to the fact that the record on appeal does not contain a transcript of the trial below, although it does contain the official documents and papers relating to the trial. This contention would have merit if the facts necessary for this appeal were in dispute. However, the pre-trial order, which is part of the record on appeal, contains all the undisputed facts necessary to resolve the issues on appeal.

■ Appellee also points out that the record is inadequate because it does not reveal what state's law the trial judge was applying when he directed a verdict for appellee. This, however, does not hinder resolution of the issues on this appeal. First of all, we note that appel-

lant concedes that if New York law is applied, then decedent's death by heart attack is not within the provisions of the accident policy as those provisions have been interpreted by New York courts. Secondly, we are reminded of our well established appellate maxim that if a trial court's decision is correct upon any proper theory, we will uphold that decision.[1] Hence, if we can determine that the trial court should have looked to New York substantive law in interpreting the policy, then we can affirm because, in any event, the trial court's decision is concededly correct under New York law.

This brings us to the important conflict of law question: whether the substantive law of New York or New Mexico should have been applied by the United States District Court of New Mexico sitting in this diversity case. Fundamental to any diversity case is the Erie doctrine which, in simplified statement, requires federal courts to apply the law of the forum state.[2] In Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Erie doctrine was applied to conflicts situations with the result that federal courts sitting in diversity apply the conflicts rules of the forum state. Bound by these decisions, the trial court

in this case was required to look to New Mexico's conflicts of law rules to determine which state's substantive law should be applied.

The Supreme Court of New Mexico has not had an opportunity to determine what conflicts rule should be applied in the exact factual setting involving a group accident insurance policy which confronts us here. However, the New Mexico high court has many times decided conflicts cases involving contracts, and more particularly insurance contracts. In those cases, New Mexico has adopted the familiar conflicts rule that, when interpreting a contract, the court should look to the law of the place wherein the contract was consummated.[3] And by "place of consummation," the New Mexico Supreme Court means the place where the last act necessary for the formation of a contract was accomplished.[4]

The undisputed facts in this case leave no doubt but that the master accident insurance policy was consummated in New York, because it was signed and issued to I.B.M. in that state. In view of these facts, the trial court was bound by New Mexico's choice of law rule to look to the substantive law of New York in interpreting the coverage provisions of the policy.[5] And as we have already

1. Utah Copper Co. v. Railroad Retirement Board, 129 F.2d 358 (10th Cir. 1942); see Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

2. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. Miller v. Mutual Benefit Health & Acc. Ass'n of Omaha, 76 N.M. 455, 415 P.2d 841 (1966); Merriman v. Harter, 59 N.M. 154, 280 P.2d 1045 (1955); Satterwhite v. Stolz, 79 N.M. 320, 442 P.2d 810 (1968); see Spiess v. United Services Life Insurance Company, 348 F.2d 275 (10th Cir. 1965).

4. Merriman v. Harter, 59 N.M. 154, 280 P.2d 1045 (1955); Transradio Press Service v. Whitmore, 47 N.M. 95, 137 P.2d 309 (1943); Alexander Film Co. v. Pierce, 46 N.M. 110, 121 P.2d 940 (1942); see Spiess v. United Services

Life Insurance Company, 348 F.2d 275 (10th Cir. 1965).

5. It is unnecessary for us to delve into difficult *renvoi* problems to determine whether the New Mexico conflicts rule, which refers us to New York law, requires us to look to New York's conflicts rules as well as to New York's substantive law. Even if we were to look to the whole of New York law, including its conflicts rules, in our opinion the New York choice of law rule would not refer us back to New Mexico and thereby get us started on a logically endless *renvoi* circle. On the contrary, an application of the New York conflict rules also brings us to the conclusion that New York's substantive law applies. Employers' Liability Assurance Corp. v. Aresty, 11 A.D. 2d 331, 205 N.Y.S.2d 711 (1960), aff'd 11 N.Y.2d 696, 225 N.Y.S.2d 764, 180 N.E.2d 916 (1962); Nobile v. Travelers

pointed out, it is conceded that an application of New York substantive law requires the verdict for appellee just as the trial court held.

■ Upon concluding that the New Mexico conflicts rule requires an application of New York law, we should add that we are unimpressed with appellant's contention that this court should apply the so-called "center of gravity" or "substantial contacts" choice of law rule rather than the traditional rule espoused by the New Mexico courts. Putting aside the question whether the "substantial contacts" approach would direct a different result, it is more important to note that New Mexico courts have never even intimated that they would adopt the "substantial contacts" theory.[6] After Erie, supra, and Klaxon, supra, it should go without saying that a federal court applying state law cannot change that state law; nor can the federal court ignore the state's law and adopt a different approach, no matter how honored that approach may be.

■ Appellant alternately contends that even if the traditional conflicts rule is applied, New Mexico law should have been applied. Appellant premises this argument on the unique character of group insurance involving a master policy and individual certificates to insureds. From this, appellant contends that in addition to appellee's contract with I.B.M., there was also a contract between appellee and each insured under the policy. Appellant concludes that the so-called contract between appellee and the insured decedent was consummated in New Mexico when the certificate of insurance was delivered there, and hence,

even under the traditional conflicts rule, New Mexico law applies. However, our close reading of the policy does not disclose anything amounting to a second contract of insurance. It is difficult to view the issued certificate as the talisman of a second contract when in fact the certificate is not even necessary for insurance but is issued only when required by state law. Moreover, in cases where the problem has been considered, the courts have not assigned such exaggerated significance to the certificate of insurance. Instead, the vast weight of decisions unite in holding that group insurance policies should be interpreted according to the law of the jurisdiction wherein the master policy was issued and delivered.[7]

■ Lastly, we must deal with the contention that the trial court should have abstained and that we too should abstain from deciding this case because the Supreme Court of New Mexico has not yet had an opportunity to consider the exact issue posed here. However, we are not troubled by the fact that New Mexico courts have not precisely ruled on what choice of law should be applied in interpreting group insurance policies. It is enough that New Mexico has developed choice of law rules with relation to insurance contracts, without requiring a specific state court holding on what choice of law should be applied in a group insurance case. In our view, there are simply no special circumstances involved here, nor are there significant novel elements in this case so as to require this court to stay its hand until the New Mexico courts rule on the precise facts which confront us here.[8]

Affirmed.

Indemnity Co., 4 N.Y.2d 536, 176 N.Y.S. 2d 585, 152 N.E.2d 33 (1958); Tormey v. Travelers Insurance Company, 6 A.D. 2d 13, 174 N.Y.S.2d 496 (1958); cf. Oakley v. National Western Life Insurance Company, 294 F.Supp. 504 (S.D. N.Y.1968).

6. We note that the "center of gravity" or "substantial contacts" choice of law rule has been widely publicized since its first notices in Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954). In the con-

flicts cases decided in New Mexico since Auten, the New Mexico courts have had ample opportunity to adopt that conflicts rule, but thus far they have been disinclined to do so.

7. Cases annotated in 72 A.L.R.2d 695. See The Restatement, 2nd, Conflicts of Law § 192, Comment g (proposed official draft, May 1, 1968).

8. Cf. Kaiser Steel Corp. v. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968).