680 P.2d 627

Jerry Lee EICHEL, Jr.,
Plaintiff-Appellee,

v.

GOODE, INC., Defendant-Appellee,

and

Winn-Dixie, Texas, Inc.,
Defendant-Appellant,

and

KIMBELL, INC., Defendant and
Third-Party Plaintiff-Appellee,

v.

SMITH'S FOOD KING PROPERTIES,
dba Smith's Food King, Inc., Third-
Party Defendant-Appellee.

Jerry Lee EICHEL, Jr.,
Plaintiff-Appellee,

v.

SMITH'S FOOD KING, INC., and
Protective Insurance,
Defendants-Appellees.

No. 7254.

Court of Appeals of New Mexico.

April 3, 1984.

Terry M. Word, P.C., Albuquerque, for plaintiff-appellee.

Carolyn N. Merchant, Margo J. McCormick, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for third-party defendant-appellee.

James C. Ritchie, Edward W. Shepherd, Henry M. Bohnhoff, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant and third-party plaintiff-appellee.

Robert A. Martin, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendant-appellant.

## OPINION

ALARID, Judge.

This case arose out of a supermarket machine accident in which a young boy's hand and arm were crushed by the ramplate of a cardboard box baler or compactor. After a jury verdict the court entered judgment against the supermarket and its predecessors in interest. We consider whether the trial court erred in instructing the jury that appellant (Winn-Dixie, Texas, Inc.) was a "supplier" of chattels; whether New Mexico and Florida substantive laws should have been applied in construing two distinct indemnification clauses; and whether the cost award was appropriate.

## FACTS

Jerry Lee Eichel (plaintiff), who was sixteen years old and employed by Smith's Food King, Inc. (third-party defendant Smith's) at the time of the July 26, 1979 accident, sued five defendants for personal injuries sustained. The baler/compactor was manufactured by Goode, Inc. (defendant Goode) with a safety switch which prevented the dangerous operation of the product with its door open. The evidence indicates the safety device was removed by the baler's original owner, Kimbell, Inc. (defendant and third-party plaintiff Kimbell), thus allowing the machine to be operated with its door folded down in an open position. Once in an open position, the door obstructed safety signs affixed by the manufacturer which warned that the door be kept closed while operating the machine. Plaintiff was injured as he was operating the modified machine with its door open.

Plaintiff sued Goode, the manufacturer of the baler/compactor; Kimbell, the first owner-operator of the supermarket; Winn-Dixie, the second owner-operator of the supermarket; and Foodway Stores, Inc. Plaintiff also sued his employer, Smith's, for workman's compensation and that action was consolidated with this case.

Jury trial on the liability issues began March 7, 1983. At the close of evidence the court directed a verdict in favor of Goode.

The court before trial granted Kimbell's summary judgment motion against Winn-Dixie based on indemnity arising from an indemnity clause contained in the parties' August 28, 1976 sale of assets agreement. The indemnity agreement made Winn-Dixie, as the buyer of the supermarket under the agreement, liable to indemnify and hold harmless Kimbell "against all actions, suits, demands, damages, losses or expenses which may be threatened or incurred at any time * * * by reason of any claim, lien or tax arising out of the business purchased and conducted by Winn-Dixie, subsequent to August 28, 1976."

The court, sitting without a jury, denied Winn-Dixie's third party claim against Smith's which alleged indemnity based on the parties' August 8, 1978 sale of assets agreement.

Foodway Stores, Inc. was a solely-owned subsidiary of Kimbell, Inc., and was merged with Kimbell in early 1973. Consequently, independent claims against Foodway were not pursued.

Smith's as plaintiff's employer, was entitled to protection of the New Mexico Workmen's Compensation Act, which does not permit plaintiff recourse against his employer beyond those exclusive remedies provided under the Act. The compensation issues were settled before trial.

The trial court gave instructions that Kimbell and Winn-Dixie, in their sale of supermarket assets and equipment, were "suppliers" of chattels under Section 388 of the Restatement (Second) of Torts (1965). The court denied Winn-Dixie's requested instruction on sale of the equipment (of which the baler/compactor was a part) "as is."

The jury found plaintiff suffered $150,000 total damages. The jury apportioned negligence as 55% for Kimbell, 25% for Winn-Dixie, 19% for Smith's, and 1% for plaintiff. The court calculated the result-

ing award as $120,000 for plaintiff ($82,500 from Kimbell, and $37,500 from Winn-Dixie). Pursuant to the earlier summary judgment order, Winn-Dixie was held liable for Kimbell's liability, plus necessary and reasonable attorney's fees, expenses, and costs.

DISCUSSION

## I. WHETHER WINN–DIXIE WAS A "SUPPLIER" OF CHATTELS UNDER RESTATEMENT (SECOND) OF TORTS SECTION 388

Appellant Winn-Dixie challenges the instruction that it was a "supplier" of chattels, which would under Section 388 invoke seller's duty to warn buyer of a dangerous condition of the product sold. *See Fabian v. E.W. Bliss Co.*, 582 F.2d 1257 (10th Cir. 1978); *Richards v. Upjohn Co.*, 95 N.M. 675, 625 P.2d 1192 (Ct.App.1980). Section 388 provides as follows:

§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Comment c. points out that Section 388 applies to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third party. Thus, a "supplier" for Section 388 purposes is "any person who for any purpose or in any manner gives possession of a chattel for another's use * * * without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied * * * *" Restatement, *supra*, at 302.

 Under the foregoing description, Winn-Dixie qualifies as a supplier of the baler/compactor. Winn-Dixie asserts that even if it was a supplier, Section 388 does not apply. Winn-Dixie argues that Section 388 was inapplicable as a matter of law because, under the evidence, Smith's had notice as to the condition of the baler, and used the baler for over a year before the accident occurred. We do not agree with this matter of law argument; there was a factual issue, properly submitted to the jury, concerning Section 388.

 Winn-Dixie further argues that Section 388 should not have been applied to it because it sold the business and equipment to Smith's "as is." Authorities upon which appellant relies are inapposite because they relate to disclaimer of warranties, not to liability premised on negligence for failure to warn of a known danger. *See Fabian v. E.W. Bliss Co.; Jones v. Minnesota Mining and Manufacturing Co.*, 100 N.M. 268, 669 P.2d 744 (Ct.App. 1983); *Richards v. Upjohn Co.* Courts have found that a bare "as is" clause cannot, without more, relieve a party of liability under tort law. *Alger v. Abele Tractor & Equip. Co.*, 92 A.D.2d 677, 460 N.Y.S.2d 202 (Sup.Ct.1983); *Fleming v. Stoddard Wendle Motor Co.*, 70 Wash.2d 465, 423 P.2d 926 (1967); *Knipp v. Weinbaum*, 351 So.2d 1081 (Fla.App.1977); *Kopischke v. First Continental Corp.*, 610 P.2d 668 (Mont.1980); *Turner v. Int'l Harvester Co.*, 133 N.J.Super. 277, 336 A.2d 62 (Super.Ct.1975). *Compare* NMSA 1978, UJI Civ. 14.33 (Repl.Pamp.1980). We agree with this view because it would serve no public policy to allow a contracting party to rely on the existence of a general "as is" clause in a contract to avoid his duties under the law of torts. *See Jig The Third Corp. v. Puritan Marine Ins. Under. Corp.*, 519 F.2d 171 (5th Cir.1975).

## II. WHETHER NEW MEXICO AND FLORIDA LAWS WERE APPROPRIATELY APPLIED TO TWO INDEMNIFICATION CLAUSES

■ The trial court on summary judgment applied New Mexico law in construing the indemnity provision contained in the 1976 Kimbell/Winn-Dixie asset sales contract. This clause made Winn-Dixie liable for the damages adjudged against Kimbell in this case. New Mexico law holds "that an express reference to indemnitee's negligence [in the contract is not] necessary as a condition precedent to his being held harmless for his own negligence." *Metropolitan Paving Co. v. Gordon Herkenhoff & Assoc.*, 66 N.M. 41, 341 P.2d 460 (1959). Appellant on appeal challenges the trial court's application of New Mexico law and contends the provisions in a lease agreement made the contract indemnity provision inapplicable. The record does not show, however, that appellant raised these issues below. "Issues not properly raised in the trial court and on which a ruling by the trial court was not properly invoked will not be considered on appeal." *In re Will of Skarda*, 88 N.M. 130, 537 P.2d 1392 (1975). *See also* NMSA 1978, Civ.App.R. 11; *Pillsbury v. Blumenthal*, 58 N.M. 422, 272 P.2d 326 (1954); *Gurule v. Albuquerque-Bernalillo Co. Econ. Opportunity Bd.*, 84 N.M. 196, 500 P.2d 1319 (Ct.App. 1972). The issue is therefore not properly before this court.

Appellant also challenges the trial court's application of Florida law in interpreting the indemnity provision contained in the 1978 Winn-Dixie/Smith's asset sales contract. The indemnity clause provides:

Purchaser agrees to indemnify and hold harmless Seller against all actions, suits, demands, damages, losses or expenses which may be threatened or incurred at any time hereafter by reason of any claim, lien or tax arising out of the businesses purchased by Purchaser from Seller hereunder and conducted by Purchaser subsequent to August 23, 1978 (including any liabilities assumed by Purchaser hereunder). The indemnity provided herein shall include, but not be limited to, any indemnity against liability rather than against loss, so that Seller may look to Purchaser under such indemnity upon the assertion of any claims or causes of action against which Seller is to be indemnified hereunder, as well as any losses hereunder, including reasonable attorney's fees.

This clause is virtually identical to the indemnification provision contained in the 1976 Kimbell/Winn-Dixie agreement. If New Mexico rather than Florida law was applicable, Winn-Dixie would have recourse against Smith's for any damage judgment entered against it. Smith's in such a case would not enjoy the shield of the Workmen's Compensation Act exclusive remedy provision, NMSA 1978, § 52–1–8, because an employer may be express contract of indemnity relinquish the Act's statutory protection. *City of Artesia v. Carter*, 94 N.M. 311, 610 P.2d 198 (Ct.App.1980).

In supporting its challenge to the application of Florida law, appellant argues that (1) New Mexico law should have applied because the Winn-Dixie/Smith's agreement was actually a New Mexico contract; (2) in any case, Florida law would refer the problem back to New Mexico; and (3) the modern conflicts approach requires application of New Mexico law.

*First,* New Mexico follows the traditional conflicts of law analysis in determining the choice of law applicable to contracts. This court stated the rule as follows:

A contract is made "at the time when the last act necessary for its formation is done, and at the place where the final act is done." *Merriman v. Harter*, 59 N.M. 154, 280 P.2d 1045 (1955). The place where the final act is done determines the applicable law for the interpretation of the contract. See *Miller v. Mutual Benefit Health & Acc. Ass'n*, 76 N.M. 455, 415 P.2d 841 (1966); *Merriman v. Harter,* supra; *Spiess v. United Services Life Ins. Co.*, 348 F.2d 275 (10th Cir. 1965).

*Satterwhite v. Stolz*, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968). *See also Transradio*

*Press Service v. Whitmore*, 47 N.M. 95, 137 P.2d 309 (1943); *Alexander Film Co. v. Pierce*, 46 N.M. 110, 121 P.2d 940 (1942); *Riblet Tramway v. Monte Verde Corp.*, 453 F.2d 313 (10th Cir.1972); *Pound v. Insurance Co. of North America*, 439 F.2d 1059 (10th Cir.1971); *Haury v. Allstate Ins. Co.*, 384 F.2d 32 (10th Cir.1967).

 Substantial evidence supports the trial court's finding that the Asset Purchase Agreement was executed on August 8, 1978 in the State of Florida. There is evidence that initial negotiations occurred per telephone calls between the corporate offices of Winn-Dixie in Florida and Smith's in Utah. Final negotiations took place in Florida for the convenience of Winn-Dixie. After three days of final negotiations, the Asset Purchase Agreement was executed in Florida. After the contract's execution, either party could have enforced the agreement in a suit for specific performance. No meetings took place in Albuquerque, New Mexico, for the purpose of negotiating the sale. Under these facts, our conflicts rule refers New Mexico courts to Florida law in interpreting the meaning of the indemnity provision in the Asset Purchase Agreement. Looking to Florida law as to the meaning of the indemnity provision does not conflict with New Mexico public policy. *See Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.1982); *Church v. Church*, 96 N.M. 388, 630 P.2d 1243 (Ct.App.1981); *Matter of Estate of Voight*, 95 N.M. 625, 624 P.2d 1022 (Ct.App.1981).

 *Second*, Florida law does not, as suggested by appellant, refer the problem back to New Mexico. The court in *Center Chemical Co. v. Avril, Inc.*, 392 F.2d 289 (5th Cir.1968), quoted from *Walling v. Christian & Craft Grocery Co.*, 41 Fla. 479, 27 So. 46, 47 L.R.A. 608 (1899), in recognizing the proper rule for Florida. *Center Chemical* quoted as follows:

> "[M]atters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy depend upon the law of the place where the suit is brought. * * *"

392 F.2d at 290. Contrary to appellant's suggestion, the present case involves interpretation of a contractual provision, it does not concern a matter connected with performance under the contract. Our inquiry here focuses on the meaning of the indemnity provision by an application of the law of the proper forum. Consequently, whether or not the *Center Chemical* conflicts rule were applied, the proper law choice would be Florida, the place where the contract was made.

*Third*, appellant's argument that modern conflicts of law rules should be applied and would require application of New Mexico law is without merit. This court cannot entertain appellant's invitation to adopt the modern "center of gravity" or "grouping of interests" theory over our present "last act" rule. We must apply decisions of our Supreme Court. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). We are bound by the traditional "last act" conflicts rule, established by our Supreme Court. *Miller; Merriman.*

Florida follows the majority rule on the question of whether the terms of a contract provide indemnity for one's own negligence. *Northwestern Nat'l Ins. Co. v. Dade County*, 461 F.2d 1158 (5th Cir.1972); *Gulf Oil Corp. v. Atlantic Coast Line Railroad Co.*, 196 So.2d 456 (Ct.App.), *cert. denied*, 201 So.2d 893 (Fla.1967). In *Gulf Oil*, in denying indemnification for negligence under a clause similar to the one used in the instant case, the Florida court said: "We * * * conclude that in order for an indemnity clause or contract to indemnify against an indemnitee's own negligence, the *clause or contract must expressly state* that such liability is undertaken by the indemnitor." 196 So.2d at 459 (emphasis added). *See also University Plaza Shopping Center, Inc. v. Stewart*, 272 So.2d 507 (Fla.1973); *Jackson v. Florida Weathermakers*, 55 So.2d 575 (Fla.1952); *Florida Power & Light Co. v. Elmore*, 189

So.2d 522 (Fla.App.1966); *Nat Harrison Associates, Inc. v. Florida Power & Light Co.,* 162 So.2d 298 (Fla.App.1964).

 Application of the Florida rule to the 1978 Winn-Dixie/Smith's indemnity provision requires us to hold that the language of the indemnity clause is insufficient to make Smith's liable to Winn-Dixie under the contract for Winn-Dixie's own negligence. The language "indemnify and hold harmless Seller [Winn-Dixie] against all actions, suits, demands, damages, losses or expenses" would be sufficient under New Mexico law, but fails under Florida's stricter rule. Absent an express statement that Smith's undertakes liability for Winn-Dixie's negligence, Winn-Dixie cannot prevail. The indemnity clause does not aid appellant. The issue was correctly decided by the trial court.

Appellant's further argument that the indemnity clause contained in Kimbell's lease to Winn-Dixie (the lease was separate from the Sale of Assets Contract), and in Winn-Dixie's subsequent assignment of that lease to Smith's, absolves Winn-Dixie of liability is also without merit. The lease assignment was executed after the master sale of assets contract and the language of the clause in any case specifically excluded negligent acts of the landlord from the indemnity provision's terms.

III. WHETHER THE COST AWARD WAS APPROPRIATE

Winn-Dixie asserts that on the liability issues (not the indemnity issues) "[t]he court apportioned the costs as 70% to Plaintiff from Winn-Dixie." This is incorrect. The trial court ruled that plaintiff was "to recover his costs against Kimbell and Winn-Dixie, Kimbell to pay 70% of such costs and Winn-Dixie to pay 30% of such costs." Inasmuch as the jury determined that Winn-Dixie's negligence was 25%, Winn-Dixie asserts "the trial court erred in requiring Winn-Dixie to pay more than 25%" because more than 25% does not accord with "the thrust of the comparative negligence doctrine * * * *"

Assessment of costs is within the discretion of the trial court. We will not interfere with the trial court's discretionary assessment except when discretion is abused. NMSA 1978, Civ.P.R. 54(d) (Repl.Pamp.1980); *Hales v. Van Cleave,* 78 N.M. 181, 429 P.2d 379 (Ct.App.1967). The liability cost assessment of 30% relates to Winn-Dixie's direct liability for $37,500 of the net award to plaintiff of $120,000. However, a direct relation of percentage of fault to costs is not required, the matter being in the trial court's discretion. *Compare South v. Lucero,* 92 N.M. 798, 595 P.2d 768 (Ct.App.1979). No abuse of discretion has been shown.

Having found no error in the trial court's judgment on the issues discussed, we affirm. Appellant shall bear the cost of this appeal.

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.