In re Mark Charles NESTLEN and Catherine Anne Nestlen, Debtors.

Dykstra Exterior, Inc., Appellant,

v.

Mark Charles Nestlen and Catherine Anne Nestlen, Appellees.

BAP No. WO–10–030.
Bankruptcy No. 09–16838.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 21, 2010.

Submitted on the briefs: * Brent A. Austin and Tom M. Moore of Metzer & Austin, P.L.L.C., Edmond, OK, for Appellant.

Before NUGENT, RASURE, and ROMERO, Bankruptcy Judges.

RASURE, Bankruptcy Judge.

Creditor Dykstra Exterior, Inc. ("Dykstra") appeals an order of the Bankruptcy Court for the Western District of Oklahoma overruling Dykstra's objection to the homestead exemption claimed by Debtors

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

Mark and Catherine Nestlen (the "Nestlens").[1] We AFFIRM.

## I. BACKGROUND

The Nestlens filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 1, 2009 (the "Petition Date").[2] On their amended Schedule C, they claimed their homestead, which they valued at $275,000, as fully exempt under Oklahoma law.[3] Dykstra objected to the exemption, arguing that the Nestlens had increased their equity in the property during the 1,215–day period prior to the Petition Date, and therefore their homestead exemption was limited in amount to $136,875 by virtue of 11 U.S.C. § 522(p) (the "Objection").[4]

Prior to the hearing on the Objection, the parties stipulated to the relevant facts[5] and fully briefed the legal issues,[6] and at the hearing, the parties presented oral argument and the bankruptcy court entered its bench ruling.[7] The bankruptcy court concluded that § 522(p)[8] did not apply under the facts of this case, overruled

the Objection, and allowed the Nestlens' homestead exemption in full.[9]

The following facts were uncontested. The Nestlens purchased their home in 1999 for $152,117.80 and claimed it as their homestead (the "Homestead").[10] No mortgage was granted in connection with the purchase.[11] In 2002, however, the Nestlens mortgaged the Homestead to secure a loan in the approximate principal amount of $183,000.00 (the "2002 Mortgage").[12]

In 2001 or 2002, the Nestlens hired Dykstra to install some landscaping. The Nestlens disputed Dykstra's bill, and Dykstra filed a lawsuit against the Nestlens to collect the amount owed on the project.[13] In 2009, judgment was entered in Dykstra's favor in the amount of $26,772.54 (the "State Court Judgment"), and Dykstra was awarded approximately $64,000.00 in attorney fees and costs (the "Attorney Fee Award").[14]

Within the 1,215–day period prior to the Petition Date, the Nestlens fully paid the $180,886.18 balance of the loan secured by the 2002 Mortgage, of which $169,344.00 was principal and $11,542.18 was accrued

1. *Order Granting Debtors' Claim of Homestead Exemption, in* Appellant's Appendix ("App.") at 77–78.

2. *Stipulations of Fact Between Debtors and Creditor, Dykstra Exterior, Inc. Regarding Objection to Debtors' Homestead Exemption ("Stipulation")* at 3, ¶ 8, *in* App. at 54.

3. *Id. at 3,* ¶ 9 *in* App. at 54.

4. *Dykstra Exterior, Inc.'s Objection to Debtors' Homestead Exemption and Brief in Support, in* App. at 12–25.

5. *Stipulation, in* App. at 52–54.

6. *Debtors' Response to Dykstra Exterior, Inc.'s Objection to Debtors' Claim of Homestead Exemption ("Nestlens' Response Brief"), in* App. at 26–41; *Dykstra Exterior, Inc.'s Reply Brief in Support of Objection to Debtors' Homestead*

*Exemption ("Dykstra's Reply Brief"), in* App. at 42–51.

7. *Transcript of Proceedings conducted on April 27, 2010 ("Transcript"), in* App. at 57–76.

8. Unless otherwise stated, all statutory references in the text refer to the Bankruptcy Code, Title 11 of the United States Code.

9. *Order Granting Debtors' Claim of Homestead Exemption, in* App. at 77–78.

10. *Stipulation* at 1, ¶ 2, *in* App. at 52.

11. *Id.*

12. *Id.* at 2, ¶ 4, *in* App. at 53.

13. *Id.* at 1, ¶ 3, *in* App. at 52.

14. *Id.*

interest.[15] The Nestlens also spent $80,000.00 to $100,000.00 to repair and add improvements to the Homestead (the "Improvements") during that period.[16]

Thereafter, the Nestlens obtained an equity line of credit secured by a mortgage against the Homestead, from which they drew funds sufficient to satisfy the State Court Judgment.[17] On the Petition Date, the Nestlens still owed $32,921.00 on the equity line of credit.[18]

Arguing that the Nestlens were not entitled to exempt the entire value of their Homestead, Dykstra invoked § 522(p)(1), which provides that a debtor may not exempt "any amount of interest [in a homestead] that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate $136,875 in value." [19] In cases interpreting § 522(p), the phrase "interest that was acquired" has been assigned at least two interpretations,[20] and Dykstra advocated the so-called "equity view." Specifically, Dykstra argued that by investing non-exempt funds in their Homestead within the 1,215–day prepetition period (the "Lookback Period"), the Nestlens increased their equity in the Homestead in an amount in excess of the $136,875 ceiling established by § 522(p), and therefore the equity exceeding $136,875 was not exempt.[21]

In their response to the Objection and in oral argument before the bankruptcy court, the Nestlens presented several

---

**15.** *Id.* at 2, ¶ 5, *in* App. at 53.

**16.** *Id.* at 2, ¶ 6, *in* App. at 53. Mr. Nestlen sold a business in 2007 which generated the funds used to retire the 2002 Mortgage and pay for the Improvements. *Id.* at 2, ¶ 5, *in* App. at 53.

**17.** *Id.* at 2, ¶ 7, *in* App. at 53. The Nestlens did not pay Dykstra the Attorney Fee Award and that claim remained unpaid on the Petition Date.

**18.** *Id.*

**19.** 11 U.S.C. § 522(p)(1); *see also* 11 U.S.C. § 104(b) (requiring the Judicial Conference of the United States to publish the applicable dollar amounts in the *Federal Register* at three year intervals) and *Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(b) of the Code,* 72 Fed. Reg. 7802–01 (Feb. 7, 2007).

**20.** These two interpretations have been denominated the "title view" and the "equity view." *See, e.g., See In re Greene,* 583 F.3d 614, 623 n. 8 (9th Cir.2009) (concluding that the word "acquire" in § 522(p) means "gaining possession or control by purchasing or gaining an *ownership interest,* either legal or equitable," and therefore § 522(p) applies only if the debtor acquired *title* during the relevant period) (emphasis added) (internal quotation marks omitted); *Parks v. Anderson,* 406 B.R. 79, 95 (D.Kan.2009) (equity (*i.e.,* value in excess of secured debt) accrued in the homestead during the 1,215–day period constituted an "interest ... acquired by a debtor"), *rev'g In re Anderson,* 374 B.R. 848 (Bankr.D.Kan.2007) (which adopted the "title view").

The Fifth Circuit has been presented with the § 522(p) "title versus equity" issue twice. In both instances, the bankruptcy court and the district court adopted conflicting theories, but the Fifth Circuit was able to resolve the appeals without deciding the conflict. *See In re Rogers,* 513 F.3d 212 (5th Cir.2008) (bankruptcy court below adopted "title view" while district court adopted "equity view"); *In re Fehmel,* 372 Fed.Appx. 507 (5th Cir.2010) (same).

A recent law review article analyzes a collection of additional lower court cases that have addressed the "interest acquired" language of § 522(p). *See* Gloria J. Liddell and Pearson Liddell, Jr., *So He Huffed and He Puffed ... But Will the Home(stead) Fall Down: The Applicability of Section 522(p)(1) of the United States Bankruptcy Code to Varying Interest Accumulations of the Debtor in Homestead Property,* 57 Drake L. Rev. 729 (2009).

**21.** *See Objection* at 2–4, *in* App. at 13–15; *Dykstra's Reply Brief* at 4, *in* App. at 45; *Transcript* at 4–12, *in* App. at 60–68.

grounds for denying Dykstra's § 522(p) objection. In opposition to Dykstra's assertion that the phrase "interest that was acquired" included an increase in *equity* during the Lookback Period, the Nestlens contended that the phrase was limited to situations where the debtor purchased and acquired *title* to the homestead during the Lookback Period.[22] Thus, they argued, the § 522(p) exemption limitation did not apply at all in their case since they had acquired title to the Homestead in 1999, which was outside the Lookback Period.

In the alternative, the Nestlens argued that even if the bankruptcy court adopted the "equity view," the equity they arguably acquired during the Lookback Period did not exceed the § 522(p) cap because the cap of $136,875 is doubled for joint debtors pursuant to § 522(m).[23] Because the amount of equity Dykstra contended the Nestlens acquired within the Lookback Period did not exceed $273,750, § 522(p) did not apply to reduce the value of their homestead exemption.[24]

At the hearing held on April 27, 2010, the bankruptcy court concluded that § 522(m) did not double the cap, but nevertheless overruled Dykstra's Objection, holding that the "interest" referred to in § 522(p) should be construed to mean title rather than equity.[25] Accordingly, because the Nestlens acquired title to the Homestead prior to the Lookback Period, the bankruptcy court concluded that § 522(p) was inapplicable, and the Homestead was fully exempt. Dykstra filed a timely appeal.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[26] A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[27] Here, the bankruptcy court's order granting the Nestlens' claim of homestead exemption is a final decision for purposes of review.[28] Neither party elected to have this appeal heard by the United States District Court for the Western District of Oklahoma, and thus appellate review by this Court is by consent.

## II. STANDARD OF REVIEW

■ The parties stipulated to all the relevant facts. The issue on appeal is whether the bankruptcy court correctly applied § 522 to the stipulated facts, which presents a legal issue subject to *de novo* review.[29]

---

**22.** *Nestlens' Response Brief* at 8–12, *in* App. at 33–37; *Transcript* at 13–16, *in* App. at 69–72.

**23.** *Nestlens' Response Brief* at 13–15, *in* App. at 38–40; *Transcript* at 16–17, *in* App. at 72–73.

**24.** *Nestlens' Response Brief* at 14, *in* App. at 39.

**25.** *Transcript* at 19, *in* App. at 75.

**26.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

**27.** *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

**28.** *See In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir.1990) ("[g]rant or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding"); *In re Carlson*, 303 B.R. 478, 480 (10th Cir. BAP 2004).

**29.** *See In re Padgett*, 408 B.R. 374, 377 (10th Cir. BAP 2009).

## IV. DISCUSSION

■ We affirm the bankruptcy court's decision that § 522(p) does not limit the Nestlens' homestead exemption, albeit on a ground not relied upon by the bankruptcy court. We conclude that because § 522(m) provides that all sections of § 522 "apply separately with respect to each debtor in a joint case," § 522(p)'s exemption cap of $136,875 must be doubled in this joint case.[30] Even if we concurred with Dykstra that the equity the Nestlens accumulated during the Lookback Period is the proper measure of "interest acquired" for purposes of § 522(p), Dykstra's own calculation of the net equity acquired in the Lookback Period does not exceed the doubled § 522(p) cap.[31] Accordingly, the bankruptcy court's ultimate conclusion that the Nestlens' homestead exemption is not limited by § 522(p) was correct.

### A. *Appellate courts may affirm on any theory supported by the record.*

■ As an initial matter, we acknowledge that the Nestlens did not appeal the bankruptcy court's apparent ruling that § 522(m) does not have "the effect of doubling the cap,"[32] nor did they, as appellees, file a brief in this appeal arguing that the bankruptcy court could be affirmed on a

ground other than the one relied upon by the bankruptcy court. However, appellate courts may affirm a judgment on any legal theory adequately supported by the record before it, even if the appellee has not participated in the appeal.

■ First, we observe that as parties that received complete relief (*i.e.,* allowance of their homestead exemption in full), the Nestlens lacked standing to appeal the bankruptcy court's determination of the § 522(m) issue.[33] Moreover, because it was unnecessary for the bankruptcy court to address the doubling issue in light of its ultimate determination that § 522(p) did not apply at all since the Nestlens did not acquire title to their Homestead within the Lookback Period, the bankruptcy court's commentary on the effect of § 522(m) on § 522(p) constituted dicta. Thus, the fact that the Nestlens did not appeal the bankruptcy court's § 522(m) ruling does not prevent us from considering whether § 522(m) applies in this case.

Second, even though the Nestlens did not file a brief in this appeal arguing that § 522(m) doubles the § 522(p) homestead exemption cap in a joint case, an appellee, again as a prevailing party below, is not required to file an appellate brief.[34] In

30. 11 U.S.C. § 522(m).

31. Because the application of § 522(m) resolves this appeal regardless of whether Congress intended "interest that was acquired" to mean title or equity, we need not weigh in on the title versus equity debate.

32. *Transcript* at 18, *ll.* 10–11, *in* App. at 74.

33. A prevailing party generally is not aggrieved, and thus lacks standing to appeal. *See, e.g., In re Turner,* 156 F.3d 713, 716–17 (7th Cir.1998). Further, in most instances, a cross-appeal of a particular issue decided against the prevailing party is "not necessary or appropriate," and cross-appeals are disfavored because they increase the complexity and cost of an appeal. *Leprino Foods Co. v.*

*Factory Mut. Ins. Co.,* 453 F.3d 1281, 1290 (10th Cir.2006) (cross-appellant was ordered to bear the costs of the unnecessary cross-appeal). *See also Moss v. Kopp,* 559 F.3d 1155, 1161 n. 6 (10th Cir.2009) ("appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon a matter overlooked or ignored by it") (quoting *United States v. Am. Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924)).

34. The Tenth Circuit allows appellees to "rest on their briefs filed with the district court." *McLamore v. Thornburgh,* 944 F.2d 911, 1991 WL 180155, at *1 n. 2 (10th Cir.1991).

their briefing and oral argument before the bankruptcy court, however, the Nestlens did assert that § 522(m) doubled the § 522(p) exemption cap in a joint case,[35] and Dykstra argued that it did not. Thus the issue was fully developed below, and the record on the issue is complete.

■ Appellate courts are "free to affirm ... on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon" by the lower court,[36] and may affirm "even where the lower court reached its conclusions from a different or even erroneous course of reasoning." [37] The caveat to this rule is that the parties must have had a "fair opportunity to develop the record and to address the ground on which we rely." [38] The purpose of requiring presentation of the issue in the lower court is "to ensure that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence or to present whatever legal arguments they may have." [39] Furthermore, even if neither party addressed the correct governing statute, case, or legal principle in its appellate brief, as is the case here, an appellate court may affirm a judgment as a matter of law.[40]

Accordingly, the fact that the Nestlens failed to argue, either by filing a brief or on cross-appeal, for affirmance based on § 522(m) does not bar this Court from considering the effect of § 522(m) in this case. Moreover, Dykstra fully briefed and orally argued its opposition to the Nestlens' interpretation of § 522(m) as it relates to § 522(p) in the bankruptcy court,[41] and thus had a "fair opportunity to develop the record and to address the ground on which we rely." [42]

### B. *Application of § 522(m).*

Section 522(m) provides that all sections of § 522 "apply separately with respect to each debtor in a joint case," subject only to any limitation provided by § 522(b).[43] Section 522(b) governs whether a debtor must claim exemptions under state law or may opt to claim exemptions set forth in § 522(d) of the Bankruptcy Code.[44] Residents of Oklahoma may not opt to exempt property from the bankruptcy estate under § 522(d), but instead are limited to claiming exemptions under Oklahoma

**35.** *See Nestlens' Response Brief* at 13–15, *in* App. at 38–40; *Transcript* at 16–17, *in* App. at 72–73.

**36.** *Griess v. Colo.*, 841 F.2d 1042, 1047 (10th Cir.1988) (internal quotation marks omitted).

**37.** *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1017 (10th Cir.2004) (quoting *Abuan v. Level 3 Commc'ns*, 353 F.3d 1158, 1171 n. 3 (10th Cir.2003)). *See also Reynolds v. United States*, 643 F.2d 707, 710 (10th Cir.1981) ("we are reminded of our well established appellate maxim that if a trial court's decision is correct upon any proper theory, we will uphold that decision") (quoting *Pound v. Ins. Co. of N. Am.*, 439 F.2d 1059, 1062 (10th Cir.1971)).

**38.** *Ctr. for Native Ecosystems v. Cables*, 509 F.3d 1310, 1324 (10th Cir.2007) (citation omitted).

**39.** *Id.* (quoting *Anixter v. Home–Stake Prod.*, 77 F.3d 1215, 1228 (10th Cir.1996)).

**40.** *See, e.g., Griffith v. Colo.*, 17 F.3d 1323, 1328–29 (10th Cir.1994) (judgment affirmed based on rule established in a Supreme Court case that neither party cited or argued in their appellate briefs).

**41.** *Dykstra's Reply Brief* at 5–6, *in* App. at 46–47; *Transcript* at 17–18, *in* App. at 73–74.

**42.** *Cables*, 509 F.3d at 1324 (citation omitted).

**43.** 11 U.S.C. § 522(m).

**44.** 11 U.S.C. § 522(b).

law.[45] Under the Oklahoma Constitution and Oklahoma statutes, Oklahoma debtors are entitled to protect the entire value of their homestead from claims of creditors.[46]

The Nestlens claimed the full value of their Homestead exempt under Oklahoma's unlimited exemption. If the § 522(p) cap is applicable in this case, as Dykstra argues, the issue is whether the cap is $136,875, or whether the cap "appl[ies] separately" to each of the Nestlens, resulting in a cap of $273,750. In its briefs and oral argument below, Dykstra relied on the Oklahoma Supreme Court case of *In re Arnold*[47] in contending that under Oklahoma law, a married couple may claim only one homestead and therefore Oklahoma joint debtors are not entitled to double the § 522(p) cap.

In *Arnold*, the issue was whether, under Oklahoma's homestead exemption law which limits the acreage "any person" may claim as rural homestead to 160 acres, a husband and wife could each claim 160 acres as homestead, thus exempting a total of 320 acres.[48] The Oklahoma Supreme Court concluded that the "any person" language in the statute meant that both the husband and wife could claim homestead protection on the same 160 acres, even if the homestead was owned by only one spouse, but they could not each claim a separate 160 acre homestead.[49] The court cited a Tenth Circuit case, *Pruitt v. Wil-*

*son (In re Pruitt)*, which applied Colorado homestead law, as supportive of the principle that "homestead is a property right rather than a personal right, and whether realty is held jointly or singly there is only one homestead right which attaches to realty."[50] Thus, the Oklahoma Supreme Court held that the Arnolds could not double the number of acres protected as homestead by claiming two separate homesteads.

The Nestlens are not attempting to claim two separate 160–acre parcels as their homestead as the debtors in the *Arnold* case were, and thus the *Arnold* case does not address the issue presented here. The issue in this case is not whether the homestead of a married couple may be limited in size, but to what extent the homestead exemption may be limited in value. Neither Oklahoma's Constitution[51] nor its homestead exemption statutes[52] place any limit on the *value* of the homestead one spouse or both spouses jointly may exempt from execution by creditors.[53] The Bankruptcy Code, however, does place a ceiling on an Oklahoma debtor's homestead exemption in very limited circumstances. Relevant to this case, § 522(p)(1) prohibits a debtor from exempting any interest acquired in the Lookback Period to the extent it exceeds $136,875.[54]

Some courts examine state law to determine whether the § 522(p) homestead ex-

---

**45.** Okla. Stat. tit. 31, § 1(B).

**46.** Okla. Const. art. XII, § 1–3; Okla. Stat. tit. 31, §§ 1(A)(1) and 2.

**47.** 73 P.3d 861 (Okla.2003).

**48.** *Id.* at 862.

**49.** *Id.* at 862–63.

**50.** *Id.* at 864 (citing 829 F.2d 1002 (10th Cir.1987)).

**51.** Okla. Const. art. XII, § 1–3.

**52.** Okla. Stat. tit. 31, §§ 1(A)(1) and 2.

**53.** *See, e.g.,* Okla. Stat. tit. 31, § 1(A)(1) (home is exempt from attachment, execution and forced sale). A limitation on the value of the urban homestead exemption arises *only* if more than 25% of the total square footage of the improvements on the claimed homestead is used for business purposes, in which case the exemption is limited to $5,000. *See* Okla. Stat. tit. 31, § 2(C).

**54.** 11 U.S.C. § 522(p)(1).

emption cap should be doubled under § 522(m) for joint debtors. For example, in the case of *In re Rasmussen*, a Florida bankruptcy court discussed at length the concept of "stacking" exemptions, and concluded that state law governed whether a married couple is permitted to "stack" homestead exemptions and thus double the § 522(p) cap.[55] Following *Rasmussen*, Florida bankruptcy courts have consistently held that because each spouse is entitled to claim a homestead exemption under Florida law, the § 522(p) cap is doubled for Florida joint debtors.[56]

■ We conclude, however, that state law is irrelevant to the application of § 522(m) to § 522(p). The § 522 cap is purely a federal concept. Moreover, because Oklahoma protects every dollar of the value of a debtor's homestead, there is no reason why an Oklahoma legislature or court would ever address whether married couples could "stack" or double the *value* of their homestead exemption. Two times infinity is still infinity. Moreover, we cannot conceive of any reason why joint debtors in different states should be subject to different federal caps, *i.e.*, why Florida joint debtors possessing an otherwise unlimited homestead exemption should be entitled to exempt $273,750 of the value of their homestead in bankruptcy, but Oklahoma joint debtors also possessing an otherwise unlimited exemption would be entitled to exempt and retain only $136,875 of the value of their home.

For these reasons, we conclude that state law does not govern whether the § 522(p) cap is doubled by virtue of § 522(m). Because the potential diminution of an Oklahoma debtor's unlimited homestead exemption for bankruptcy purposes is imposed by federal law and not by Oklahoma law, whether the § 522(p) cap should be doubled for joint debtors is a question of federal law. Therefore, we conclude that the Oklahoma Supreme Court's decision in the *Arnold* case—that a married couple cannot claim two homesteads—has no bearing on whether the § 522(p) ceiling on the value that may be claimed as exempt homestead in bankruptcy should be doubled in cases involving joint debtors.

Because § 522(m) provides that § 522 "shall apply separately with respect to each debtor in a joint case,"[57] § 522(p) is modified by § 522(m), and the § 522(p) exemption cap is doubled in a joint case. Therefore, the ceiling applicable to the value of the Nestlens' homestead exemption, if applicable at all, is $273,750.

C. *The equity Dykstra contends the Nestlens acquired in the Lookback Period does not exceed the § 522(p) cap.*

Even if we assume (without deciding) that the phrase "interest that was acquired by the debtor" in § 522(p) refers in this case to the net increase in equity in the Homestead resulting from paying off the 2002 Mortgage and adding the Improvements during the Lookback Period,[58] and even if we accept the calculation of net equity during the Lookback Period exactly as set forth in Dykstra's appellate brief,

---

**55.** 349 B.R. 747, 754–55 (Bankr.M.D.Fla. 2006).

**56.** *See, e.g., Miller v. Burns (In re Burns)*, 395 B.R. 756, 765 (Bankr.M.D.Fla.2008); *In re Limperis*, 370 B.R. 859, 860 (Bankr.S.D.Fla. 2007).

**57.** 11 U.S.C. § 522(m).

**58.** As stated above, if the bankruptcy court was correct in adopting the "title view" of § 522(p), then the § 522(p) cap is not applicable at all because the Nestlens acquired title to their homestead outside the Lookback Period that triggers the cap.

we conclude that the Nestlens' exemption is not limited by § 522(p).

From the stipulated facts, Dykstra calculates the "aggregated 'amount' of 'interest,' *i.e.*, net equity, added by the Nestlens to their homestead in the 1,215–day lookback period [as] $232,532.66 (net principal payments of $136,423 [59] plus home improvements of $96,109.66 [60])." [61] Dykstra contends that this net equity figure exceeds the § 522(p) cap of $136,875 by $95,657.66, and therefore we should allow the Nestlens' homestead exemption in the amount of $136,875 and disallow it in the amount of $95,657.66.[62]

Because the Nestlens are joint debtors, however, their § 522(p) cap is $273,750, and the net equity of $232,532.66 that was arguably acquired by the Nestlens during the Lookback Period does not exceed the § 522(p) cap. Accordingly, even after giving complete credit to Dykstra's "equity" interpretation of § 522(p) and its calculation of net equity, the value of the Nestlens' homestead exemption is still not limited by § 522(p).

## V. CONCLUSION

The bankruptcy court's order declaring the Nestlens' Homestead fully exempt is AFFIRMED.

---

59. Dykstra calculated "net principal payments" by subtracting the home equity loan balance of $32,921 from the $169,344 of mortgage principal payments made during the Lookback Period. *Brief of Appellant, Dykstra Exterior, Inc.* at 20.

60. *Id.* at 21. Dykstra extrapolated the increase in equity attributable to the $80,000 to $100,000 in Improvements from the original purchase price, the amount of the original mortgage, the cost of the improvements made by Dykstra, the cost of other improvements, and the Nestlens' valuation of the property.

61. *Id.* at 23.

